Docusign Envelope ID: DC0936B4-6C3E-8495-83FA-2E9EECAE1C1B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    Case No.   26-CR-128

ALYSSA KUVEKE,

Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorney Kevin Knight, Assistant United States Attorney, and the defendant, Alyssa Kuveke, individually and by attorney Jacob Manian, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in a single-count information, which alleges a violation of Title 21, United States Code, Sections 331(a) and 333(a)(1).

3.      The defendant has read and fully understands the charge contained in the information. She fully understands the nature and elements of the crime with which she has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4.      The defendant voluntarily agrees to waive prosecution by indictment in open court.

Docusign Envelope ID: DC0936B4-6C3E-8495-83FA-2E9EECAE1C1B

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

\*\*\*

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

From in or about February 2022 through in or about July 2023, in the State and Eastern District of Wisconsin, and elsewhere,

### ALYSSA KUVEKE

delivered, for introduction into interstate commerce, drugs and articles of food containing Selective Androgen Receptor Modulators, while such articles were misbranded, within the meaning of Title 21, United States Code, Section 343(a)(1), and adulterated, within the meaning of Title 21, United States Code, Section 342(f)(1)(B).

In violation of Title 21, United States Code, Sections 331(a) and 333(a)(1).

\*\*\*

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 1 year and $1,000. This count also carries a mandatory special assessment of $100, and a maximum of 1 year of supervised release. The parties' acknowledgments, understandings, and agreements with

2

regard to restitution are set forth later within this agreement.

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of delivering, into interstate commerce, misbranded or adulterated food, with the intent to mislead, the government would be required to prove the following beyond a reasonable doubt

(1) the defendant's products were food within meaning of federal law;
(2) the products were adulterated or misbranded; and,
(3) the products moved in interstate commerce.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that her attorney has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty

plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the information is 6 under Sentencing Guidelines Manual § 2N2.1(a).

17. If the sentencing court determines that the defendant does not have any criminal history points, and otherwise meets all of the criteria listed in Sentencing Guidelines Manual §4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level

4

decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a).

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence no higher than the low-end of the sentencing Guideline range, as calculated by the court.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move

Docusign Envelope ID: DC0936B4-6C3E-8495-83FA-2E9EECAE1C1B

to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25.     The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

26.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

27.     The defendant agrees to pay contractual restitution, in an amount no lower than $110,000 to P.B. The defendant agrees that fifty percent of the restitution obligation will be tendered at or before the completion of her change of plea hearing, while the remaining fifty percent of the restitution obligation will be tendered at or before her sentencing hearing. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. The defendant understands that the defendant shall be jointly and severally liable for the restitution obligation with Kevin Kasabula.

## DEFENDANT'S COOPERATION

28.     The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

29.     In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which

7

include the following:

a.  If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b.  If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not she was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

30.  The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the

8

defendant in a prosecution for perjury or false statement.

31.     The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32.     The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

33.     Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives her right to appeal her conviction or sentence in this case and further waives her right to challenge her conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

9

34.     The defendant knowingly and voluntarily waives any claim or objection she may have based on statute of limitations or venue.

35.     The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

36.     In connection with the defendant's plea of guilty, the defendant, in consultation with counsel, has chosen not to request discovery materials pursuant to Fed. R. Crim. P. 16 ("Rule 16 Material"). The defendant understands that if not for entering this plea of guilty, the Government would be required to produce Rule 16 Material, and would further be required to produce material pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Fed R. Crim. P. 5(f), and, if the defendant proceeded to trial, impeachment material pursuant to Giglio v. United States, 405 U.S. 150 (1972), and Jencks Act material. The defendant acknowledges that the defendant has not and will not receive such information because the defendant has decided to plead guilty, waives the right to this information, and agrees not to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any such information, apart from any information establishing the factual innocence of the defendant.

### GENERAL MATTERS

37.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38.     The parties acknowledge, understand, and agree that this plea agreement will be

10

filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's Office is free to notify any local, state, or federal agency of the defendant's conviction.

40. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed

11

a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

42. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

Docusign Envelope ID: DC0936B4-6C3E-8495-83FA-2E9EECAE1C1B

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 6/8/2026

ALYSSA KUVEKE
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 6/8/2026

JACOB MANIAN
Attorney for Defendant

For the United States of America:

Date: 6/10/26

KEVIN KNIGHT
Assistant United States Attorney

13

## Attachment A

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt. These facts are based upon information provided by a confidential informant, the anticipated testimony of citizen witnesses and law enforcement agents, electronic surveillance, records obtained via grand jury subpoenas and search warrants, and physical evidence seized throughout the investigation. The information is provided for the purpose of setting forth a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

\*\*\*

*Background on SARM's*

Athletes and body-builders who desire the effects of anabolic steroids have turned to products collectively called Selective Androgen Receptor Modulators or "SARMs." These products were developed by companies as an alternative to anabolic steroids for people who suffer from age and disease-related muscle loss. SARMs, as chemical substances that mimic the effects of testosterone and anabolic steroids, are not FDA approved.

In October 2017, the FDA issued a public warning against using SARMs in body-building products. Donald D. Ashley, director of the Office of Compliance in FDA's Center for Drug Evaluation and Research, stated that "We are extremely concerned about unscrupulous companies marketing body-building products with potentially dangerous ingredients. Body-building products that contain selective androgen receptor modulators, or SARMs, have not been approved by the FDA and are associated with serious safety concerns, including potential to increase the risk of heart attack or stroke and life-threatening reactions like liver damage."

On April 26, 2023, the FDA issued a public announcement titled, "FDA Warns of Use of Selective Androgen Receptor Modulators (SARMs) Among Teens, Young Adults." The FDA warns consumers that the FDA continues to receive adverse event reports related to the use of SARMs. The FDA's website states, "Online vendors and social media influencers are using social media to make SARMs seem safe and effective. The reality is SARMs are potentially dangerous."

14

SARMs have been found to be associated with serious or life-threatening health problems, such increased risk of heart attack or stroke, psychosis/hallucinations, sleep disturbances, sexual dysfunction, liver injury and acute liver failure, infertility, pregnancy miscarriage, and testicular shrinkage. SARMs are often sold with no warnings on the labels, potentially leading consumers to believe the products are safe. The FDA has issued Warning Letters to companies selling unapproved products marketed as SARMs over the years. The FDA has also pursued criminal actions against companies distributing these products.

<u>D.E.</u>

In March of 2020, DEA initiated an investigation into two businesses owned by D.E., after one of D.E.'s customers (P.B.) told law enforcement D.E. had been selling unsafe products. P.B. has had significant adverse health effects as a result of consuming these products, and P.B.'s related medical expenses exceed $110,000.

From 2020 to 2021, DEA and FDA-OCI case agents conducted undercover purchases of dietary supplement products at multiple stores, and through multiple websites, owned by D.E.

In 2021, law enforcement executed search warrants at D.E.'s store and residence. They found SARM's, a small amount of steroids, and $11,00 currency. D.E. began cooperating with law enforcement. During a proffer with D.E., agents asked D.E. where he obtained Anabolic Research products Superdrol (methasterone) and M-Sten (methylstenbolone), SARM products, and other products containing FDA-regulated ingredients. D.E. stated he ordered Anabolic Research steroid products from a company called "Better Distribution," which also operated under the names "Better Labels" and "Better Sales." D.E. stated Anabolic Research products were Better Distribution's own product line of steroids, exclusively manufactured and distributed solely by Better Distribution.

15

Docusign Envelope ID: DC0936B4-6C3E-8495-83FA-2E9EECAE1C1B

*Better Distribution*

D.E. also identified the email accounts and phone numbers he would use to organize sales with these entities. Law enforcement executed search warrants over those email accounts and conducted multiple buys using D.E.'s information. Law enforcement identified defendant Alyssa KUVEKE and Kevin KASABULA as a romantic partnership operating the Better Distribution businesses, since December 2021.

In 2023, law enforcement executed warrants in the District of Massachusetts, over two of their residences and their warehouse. They found multiple SARM and DMAA products at the warehouse, along with financial records and electronic evidence indicating that KASABULA and KUVEKE were operating the Better Distribution entities and selling SARM products with misleading packaging.